UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| KORYEO INTERNATIONAL CORP. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TAE HEE KIM, MARTIN LEE, and SUN BOK LEE, | ) |
| | ) |
| Defendants. | ) |

_____

Docket No.:

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Koryeo, KORYEO INTERNATIONAL CORP., doing business in Hudson County, New Jersey hereby complains of Defendants, TAE HEE KIM, MARTIN LEE, and SUN BOK LEE as follows:

<u>**NATURE OF THE ACTION**</u>

1.  This is an action between Koryeo, Koryeo International Corp. ("Plaintiff" or "Koryeo"), and former salesperson employees Defendants Tae Hee Kim ("Kim"), Martin Lee ("Martin") and Sun Bok Lee ("Sun") (collectively "Defendants"), for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 as well as temporary restraints, preliminary and permanent injunctive relief, seeking to (a) enjoin Defendants from utilizing Koryeo's confidential and proprietary information, (b) enjoining Defendants from soliciting Koryeo's customers to cease purchasing products from Koryeo and/or purchase products from any company other than Koryeo, (c) ordering Defendants to return all of Koryeo's confidential and proprietary information (and destroy any copies of such information), and (d) granting such other further relief as may be just and proper.

2.  While employed by Koryeo and thereafter, Defendants breached their duty of loyalty and their fiduciary duty by soliciting Koryeo's customers to purchase products from a

competitor (i.e. Defendants' current employer Austin Meat Company, Inc. d/b/a Austin Meat & Seafood Company ("Austin")) along with taking Koryeo's confidential and proprietary information upon leaving Koryeo. Defendants also aided and abetted each other in breaching their fiduciary duty.

3.  In addition, Defendants all exceeded their authorization and/or acted without authorization in accessing and downloading Koryeo's confidential and proprietary information both during and after their employment in violation of both Federal and New Jersey State computer fraud statutes.

4.  Defendants have also engaged in civil conspiracy, unfair competition, conversion, misappropriation of confidential and proprietary information, and have been unjustly enriched by their conduct.

5.  By reason of Defendants' wrongful acts, Koryeo has suffered damages and stands at further and immediate risk of suffering additional and irreparable damages, entitling it to injunctive relief.

6.  Accordingly, Koryeo specifically seeks an order that Defendants should be temporarily retrained and enjoined from the following:

   a.  Failing to return and/or continuing to utilize Koryeo's confidential and proprietary information;

   b.  Soliciting Koryeo's customers to cease doing business with Koryeo and/or purchase products from any company other than Koryeo.

## IDENTIFICATION OF PARTIES

7.  Koryeo is and has been at all times pertinent hereto a corporation incorporated in New York and doing business in New Jersey, maintaining its offices and principal place of business at 55 Amity Street, Jersey City, NJ 07304.

2

8.   Defendant Kim is a natural person with her place of residence at 1150 River Road, 3F, Edgewater, NJ 07020.

9.   Defendant Martin is a natural person with his place of residence at 203-04 28th Avenue, 2nd Fl., Bayside, NY11360.

10. Defendant Sun is a natural person with his place of residence at 230 Grove Street, East Rutherford, NJ 07073.

## JURISDICTION AND VENUE

11. This Court has federal question jurisdiction over this matter pursuant to 18 U.S.C. § 1030 and 28 U.S.C. § 1331 based upon Plaintiff's assertion of a federal claim for Defendants violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq*.

12. The Court also has supplemental jurisdiction over Koryeo's state law claims under 28 U.S.C. § 1367.

13. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in the District and/or because two (2) Defendants are subject to the Court's personal jurisdiction with respect to this action.

14. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## STATEMENT OF FACTS

### Koryeo's Operations

15. Koryeo is in the business of importing and distributing Asian food products in New Jersey and surrounding states including, but not limited to, New York, Connecticut and Pennsylvania.

16. Koryeo has been in business since 1975 and moved its operation from Brooklyn to New Jersey in 2015.

**Tae Hee Kim's Employment with Koryeo**

17. Kim was employed by Koryeo as a salesperson from May 16, 2016 until October 11, 2019, when she resigned her employment.

18. Kim gave no prior notice to Koryeo that she would be resigning her employment.

19. As of the start of 2019, Kim was paid a weekly salary of $919 per week, in addition to supplemental cash payments during March and June 2019 totaling $10,000. She was also provided with expense reimbursement for the use of her car, including reimbursement for gasoline usage (i.e. approximately $278 per month) and E-Z Pass usage (i.e. approximately $360 per month).

20. Furthermore, Kim was provided with health insurance benefits by Koryeo which cost Koryeo approximately $350 per month.

21. Upon information and belief, Kim resigned her employment with Koryeo in order to commence employment with Austin, one of Koryeo's competitors.

22. Upon information and belief, Kim is currently employed as a salesperson for Austin.

**Martin Lee's Employment with Koryeo**

23. Martin was employed by Koryeo as a salesperson from September 19, 2016 until October 11, 2019, when he resigned his employment.

24. Martin gave no prior notice to Koryeo that he would be resigning his employment.

25. As of the start of 2019, Martin was paid a weekly salary of $749 per week. He was also provided with expense reimbursement for the use of her car, including reimbursement for

gasoline usage (i.e. approximately $296 per month) and E-Z Pass usage (i.e. approximately $361 per month).

26. Upon information and belief, Martin resigned his employment with Koryeo in order to also commence employment with Austin.

27. Upon information and belief, Martin is currently employed as a salesperson for Austin.

**Sun Bok Lee's Employment with Koryeo**

28. Sun was employed by Koryeo as a salesperson from December 3, 2018 until October 10, 2019, when he resigned his employment.

29. Sun gave no prior notice to Koryeo that he would be resigning his employment.

30. As of the start of 2019, Sun was paid a weekly salary of $711 per week. He was also provided with expense reimbursement for the use of her car, including reimbursement for gasoline usage (i.e. approximately $121 per month) and E-Z Pass usage (i.e. approximately $201 per month).

31. Upon information and belief, Sun resigned his employment with Koryeo in order to commence employment with Austin.

32. Upon information and belief, Sun is currently employed as a salesperson for Austin.

**Defendants' Scheme to Steal Customers from Koryeo**

33. During their employment at Koryeo, Defendants were exposed to Koryeo's confidential and proprietary information, such as customer lists, sales tactics, pricing, trade secrets, financial information and general business strategies.

34. Defendants had full access to Koryeo's QuickBooks files which contained its inventory, customer contact lists, vendor lists, pricing information, sales information and statistics, accounting information along with other similar confidential and proprietary information.

35. As part of their employment, Defendants were granted access to Koryeo's QuickBooks files to perform their salesperson duties. Specifically, Defendants utilized remote computer access through "Teamview" software to access the QuickBooks files contained on their office computers.

36. Koryeo utilized several different security measures to ensure and safeguard the confidentiality of its confidential and proprietary information contained in its QuickBooks files. These measures include, but are not limited to, the following security barriers:

    a.  Koryeo's premises are protected by a security alarm system;

    b.  All employees are required to utilize a key-card to access Koryeo's premises;

    c.  Remote access to Koryeo's computers was password protected and only individuals with such passwords could access their work computers remotely; and

    d.  Koryeo's QuickBooks files (e.g. customer lists and pricing information) were password protected and only individuals with such passwords could access such files.

37. Immediately prior to their resignation and for some time thereafter, Defendants accessed, downloaded and/or copied Koryeo's confidential and proprietary information (i.e. QuickBooks files) without authorization and/or in excess of their authorized access for their personal gain at the detriment of Koryeo.

38. For example, on October 11, 2019, the early morning before Kim resigned her employment, she remotely accessed Koryeo's Quick Books accounting system for nearly three (3) hours from 1:15 a.m. until 4:01 a.m. This was unusual, as Kim normally did not normally remotely

access Koryeo's information for more than a few minutes at a time (approximately 5 to 30 minutes).[1]

39. Most egregiously, after her resignation, Kim accessed the files again on October 11, 2019 at 11:12 a.m. until 11:54 a.m. and again on October 12, 2019 at 1:06 p.m. Kim accessed Koryeo's Quick Books accounting system on October 11 and 12, 2019 in order to improperly download Koryeo's confidential and proprietary information for later use, in order to obtain an unfair advantage over Koryeo and then immediately commencing employment with Austin in direct competition with Koryeo.

40. Sun and Martin also participated in, assisted and/or had knowledge of the scheme to obtain and utilize Koryeo's confidential and proprietary information in order to solicit Koryeo's customers to cease purchasing products from Koryeo and instead purchase such products from Austin.

41. Prior to their resignation and through the present, Defendants have solicited Koryeo's customers to cease purchasing products from Koryeo and instead purchase such products from Austin.

42. Prior to their resignation through the present, Defendants have utilized Koryeo's confidential and proprietary information, accessed either in excess of their authority or without authorization, for their own benefit and to the benefit of Austin.

43. Defendants scheme has already been effective, in that Koryeo's customers have applied to Austin's credit department to establish purchasing accounts, listing Koryeo as a credit referral. For example, Austin sent a credit referral request to Koryeo for Ryan Luck Fish Inc. on October 17, 2019 and another request for 219 Jamaica Fish Market Inc. on October 21, 2019, both

---

[1] All times referenced are based on Central European Time/Central European Summer Time (CET/CEST) since Koryeo's server was located in Germany.

of whom were Koryeo's customers. Since then, both customers have reduced their product orders from Koryeo significantly.

44. Furthermore, Koryeo has been damaged by reduction in sales to several customers who, were solicited by Defendants to purchase products from Austin. Specifically, sales have been reduced for the customers including, but not limited to the following as indicated below:

| Customer | Sales: 9/11/19 – 10/11/19 | Sales: 10/11/19 – 11/11/19 | % Sales Reduction | Defendant Who Managed Account At Koryeo |
|---|---|---|---|---|
| Ryan Luck Fish Inc. | $4,719 | $1,536 | 67.45% | Tae Hee Kim |
| Southern Fish Market | $8,672 | $0 | 100% | Tae Hee Kim |
| Garden Farm Market #1 | $14,663 | $6,540 | 55.40% | Tae Hee Kim |
| Garden Farm Market #2 | $12,076 | $6,513 | 46.07% | Tae Hee Kim |
| Garden Farm Market #3 | $8,720 | $1,142 | 86.90% | Tae Hee Kim |
| Garden Farm Market #4 | $8,108 | $4,214 | 48.03% | Tae Hee Kim |
| Merrick Farm | $12,153 | $6,243 | 48.63 | Tae Hee Kim |
| 219 Jamaica Fish Market, Inc. | $19,478 | 12,862 | 33.97% | Tae Hee Kim |
| St. Ann Fish | $25,027 | $19,949 | 20.29% | Sun Bok Lee |
| Food Fair 175 | $7,727 | $4,714 | 38.99% | Sun Bok Lee |
| New Fish Plus | $10,131 | $3,053 | 69.86 | Sun Bok Lee |
| Omega Fish | $14,524 | $5,275 | 63.86% | Sub Bok Lee |
| Golden Farm Supermarket | $9,381 | $3,873.80 | 58.71% | Martin Lee |
| KCH Fish | $2,666 | $1,530 | 42.61% | Martin Lee |
| Lee's Good People | $5,741 | $3,587 | 37.52% | Martin Lee |
| Young Fish | $3,343 | $1,399 | 58.15% | Martin Lee |
| 153 Fish Market | $5,422 | $2,183 | 59.74% | Martin Lee |
| Lee K of NY | $14,441 | $3,725 | 74.21% | Martin Lee |
| Main Fish (2) | $5,803 | $1,458 | 74.88% | Martin Lee |

45. Based on this reduction in sales in the month after Defendants' employment at Koryeo ended, Koryeo is concerned about additional future sales decline due to Defendants' unscrupulous conduct. In fact, the unlawful theft and continued use of Koryeo's confidential and proprietary information (e.g. sales and vendor information) will allow Defendants current employer, Austin, to copy Koryeo's products and undercut Koryeo's pricing in order to destroy Koryeo's business. Accordingly, Koryeo is in danger of immediate and irreparable harm.

## COUNT I

## <u>VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT<br>(AGAINST ALL DEFENDANTS)</u>

46. Koryeo hereby repeats and realleges paragraphs 1 through 45 as though fully set forth herein.

47. The actions of Defendants as described above constitute violations of one or more provisions of CFAA, 18 U.S.C. § 1030.

48. CFAA provides, in relevant part:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages.

18 U.S.C. § 1030(g).

49. The "factor" described in subsection (c)(4)(A)(i)(I) is a "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value." 18 U.S.C. § 1030 (c)(4)(A)(i)(I).

50. "Loss" is defined in CFAA as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

9

51. By intentionally accessing and obtaining data and information on Koryeo's protected computers without authorization or in excess of their authorization, Defendants caused loss in excess of $5,000 in value.

52. Koryeo incurred and shall incur substantial loss in responding to Defendants' violations of CFAA, including conducting a damage assessment.

53. Koryeo has no adequate remedy at law.

**COUNT II**

**<u>MISAPPROPRIATION AND MISUSE OF TRADE SECRETS AND CONFIDENTIAL INFORMATION - NEW JERSEY TRADE SECRETS ACT, N.J.S.A. 56:15-1, et seq. ("NJTSA") (AGAINST ALL DEFENDANTS)</u>**

54. Koryeo hereby repeats and realleges paragraphs 1 through 53 as though fully set forth herein.

55. Koryeo's books, files and records, including, but not limited its QuickBooks files containing inventory, customer contact lists, vendor lists, pricing information, sales information and statistics, accounting information along with other similar non-public, business information are highly confidential.

56. This information derives independent economic value by not being accessible, through proper means, to competitors such as Austin, which can profit from its use or disclosure. The identities of Koryeo's customers, as well as other confidential and proprietary information, including, but not limited to, vendor lists, pricing information, sales information and statistics are not readily available to the public or to Koryeo's competitors. Koryeo has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

57. Koryeo has taken more than adequate measures under the circumstances to maintain the secrecy of its confidential and proprietary information, including without limitation by restricting access to such information on a need-to-know basis, and maintaining the files in a secure building and on computer systems that are password-protected.

58. Additionally, by virtue of their employment by Koryeo, Defendants had a duty not to reveal confidential and proprietary information obtained during their employment or to use such information for their own benefit and to the detriment of Koryeo.

59. By virtue of Koryeo's development and ownership of its confidential and proprietary information, Koryeo is entitled to the exclusive use and enjoyment of this information.

60. The confidential and proprietary information of Koryeo was communicated to Defendants while they were employed in positions of trust and confidence.

61. By engaged in the conduct described above, Defendants have intentionally, willfully and maliciously misappropriated, misused, revealed and disclosed trade secrets and/or confidential or proprietary information or knowledge of Koryeo, and continue and will continue to do so, in violation of a confidential relationship between Koryeo and Defendants.

62. Upon information and belief, Defendants inevitably will use or disclose Koryeo's confidential and proprietary information to Austin in the performance of their duties to Austin.

63. As a consequence of the foregoing, Koryeo has suffered and will continue to suffer irreparable harm and loss.

### COUNT III

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (AGAINST ALL DEFENDANTS)

64. Koryeo hereby repeats and realleges paragraphs 1 through 63 as though fully set forth herein.

11

65. Until the events giving rise to this action, Koryeo had maintained relationships, or the expectancy of relationships, with its customers.

66. Koryeo had the reasonable expectation that these relationships would continue and would not be unjustifiably disrupted.

67. Because Defendants worked for Koryeo before quitting their employment to work for Austin, a competitor of Koryeo, Defendants were and remain aware of these relationships and/or expectancies.

68. Notwithstanding their knowledge of the existence of these relationships and expectancies, Defendants, intentionally and with malice, unjustifiably caused customers to cease doing business (in whole or in part) with Koryeo.

69. As a result of Defendants' tortious interference with Koryeo's customer relationships, Koryeo has been injured and faces irreparable injury, and Koryeo is threatened with losing additional customers, its competitive advantage and goodwill in amounts which may be impossible to determine, unless Defendants are permanently enjoined and restrained by order of this Court.

70. WHEREFORE, Koryeo demands judgment against the Defendants jointly, severally and in the alternative, in an amount to be determined at trial, together with injunctive relief, compensatory damages, punitive damages, interest, costs, attorneys' fees and such other relief as to the Court may seem just and proper.

## COUNT IV

## BREACH OF THE DUTY OF EMPLOYEE LOYALTY
## (AGAINST ALL DEFENDANTS)

71. Koryeo hereby repeats and realleges paragraphs 1 through 70 as though fully set forth herein.

72. All employees owe their employers the duty of undivided loyalty during the time of their employment.

73. While they were still employees of Koryeo, Defendants solicited Koryeo's customers to purchase products from Austin.

74. Defendants' conduct was related to the performance of their duties.

75. Defendants' conduct permeated their services in their most material and substantial part.

76. As a result of Defendants' breach of duty of loyalty, Koryeo has been injured and faces irreparable injury, and Koryeo is threatened with losing additional customers, its competitive advantage and goodwill in amounts which may be impossible to determine, unless Defendants are permanently enjoined and restrained by order of this Court.

77. WHEREFORE, Koryeo demands judgment against the Defendants jointly, severally and in the alternative, in an amount to be determined at trial, together with injunctive relief, compensatory damages, punitive damages, interest, costs, attorneys' fees and such other relief as to the Court may seem just and proper.

## COUNT V

### BREACH OF FIDUCIARY DUTY
### (AGAINST ALL DEFENDANTS)

78. Koryeo hereby repeats and realleges paragraphs 1 through 77 as though fully set forth herein.

79. Defendants, by virtue of the exceptional trust and responsibility placed in them by Koryeo, stand in the position of a fiduciary in relation to the Koryeo that included, among other things: a duty not to improperly use Koryeo's business and business opportunities, a duty not to

solicit Koryeo's customers to purchase products from competing businesses, and a duty to not do anything on behalf of a competing business while employed by Koryeo.

80. A fiduciary has the legal obligation to prefer the interests of his principal to his own interests. By engaging in unfair competition with their employer while still employed by Koryeo, by interfering with Koryeo's business, and, upon information and belief, by misappropriating and converting Koryeo's property, Defendants violated their fiduciary duties to Koryeo.

81. As a result of Defendants' breach of fiduciary duty, Koryeo has been injured and faces irreparable injury, and Koryeo is under threat of losing additional customers, its competitive advantage and goodwill in amounts which may be impossible to determine, unless Defendants are permanently enjoined and restrained by order of this Court.

82. WHEREFORE, Koryeo demands judgment against the Defendants jointly, severally and in the alternative, in an amount to be determined at trial, together with injunctive relief, compensatory damages, punitive damages, interest, costs, attorneys' fees and such other relief as to the Court may seem just and proper.

## COUNT VI

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
## (AGAINST ALL DEFENDANTS)

83. Koryeo hereby repeats and realleges paragraphs 1 through 82 as though fully set forth herein.

84. Prior to tortiously interfering with Koryeo's business relationships, Defendants were fully aware that each of them individually owed a fiduciary duty to Koryeo that included, among other things: a duty not to improperly use Koryeo's business and business opportunities, a duty not to solicit Koryeo's customers to purchase products from competing businesses, and a duty to not do anything on behalf of a competing business while employed by Koryeo.

14

85. Despite this knowledge, Defendants encouraged each other to breach their fiduciary duty to Koryeo by encouraging each of them to improperly solicit Koryeo's customers to move their business to Austin, while still employed by Koryeo and failing to inform Koryeo of each other's scheme to solicit customers.

86. Thereafter, Defendants breached their fiduciary duty to Koryeo by continuing to improperly solicit Koryeo's customers to purchase products from Austin and/or by failing to inform Koryeo of each other's scheme to solicit customers.

87. As an active participant in the scheme to solicit and recruit Koryeo's customers, each Defendant was aware of their role in the overall illegal activity undertaken by the other Defendants.

88. As a result of Defendants' aiding and abetting each other in breaching their fiduciary duties, Koryeo has been injured and faces irreparable injury, and Koryeo risks losing additional customers, its competitive advantage and goodwill in amounts which may be impossible to determine, unless Defendants are permanently enjoined and restrained by order of this Court.

89. WHEREFORE, Koryeo demands judgment against the Defendants jointly, severally and in the alternative, in an amount to be determined at trial, together with injunctive relief, compensatory damages, punitive damages, interest, costs, attorneys' fees and such other relief as to the Court may seem just and proper.

## COUNT VII

### MISUSE OF CONFIDENTIAL AND PROPRIETARY INFORMATION
### (AGAINST ALL DEFENDANTS)

90. Koryeo hereby repeats and realleges paragraphs 1 through 89 as though fully set forth herein.

15

91. Koryeo provided specific information Defendants in the course of their employment for the sole purpose of servicing Koryeo's customers.

92. The specific information provided by Koryeo to Defendants was legally protectable as proprietary and confidential information.

93. The specific information provided by Koryeo to those Defendants was not known to others outside Koryeo's business.

94. Koryeo took measures to protect the secrecy of their proprietary and confidential information.

95. The proprietary and confidential information, developed at the Koryeo's own effort and expense, was valuable to them and to any competitor as it represents the basis for which it earns the majority of its revenue.

96. As outlined above, upon information and belief, Defendants misappropriated Koryeo's proprietary and confidential information for their own advantage.

97. As a result of Defendants' misappropriation of Koryeo's proprietary and confidential information, Koryeo has been injured and faces irreparable injury, and Koryeo is threatened with losing additional customers, its competitive advantage and goodwill in amounts which may be impossible to determine, unless Defendants are permanently enjoined and restrained by order of this Court.

98. WHEREFORE, Koryeo demands judgment against Defendants jointly, severally and in the alternative, in an amount to be determined at trial but not less than $500,000.00, together with injunctive relief, compensatory damages, punitive damages, interest, costs, attorneys' fees and such other relief as to the Court may seem just and proper.

## COUNT VIII

## CONVERSION
## (AGAINST ALL DEFENDANTS)

99. Koryeo hereby repeats and realleges paragraphs 1 through 98 as though fully set forth herein.

100.    Upon information and belief, Defendants converted Koryeo's property, such as its confidential and proprietary information, for their own use without right or color of law, thereby depriving Koryeo of control and dominion over its own property.

101.    As a result of Defendants' conversion, Koryeo has been injured and faces irreparable injury, and Koryeo is threatened with losing additional employees, its competitive advantage and goodwill in amounts which may be impossible to determine, unless Defendants are permanently enjoined and restrained by order of this Court.

102.    WHEREFORE, Koryeo demands judgment against the Defendants jointly, severally and in the alternative, in an amount to be determined at trial, together with injunctive relief, compensatory damages, punitive damages, interest, costs, attorneys' fees and such other relief as to the Court may seem just and proper.

## COUNT IX

## UNFAIR COMPETITION
## (AGAINST ALL DEFENDANTS)

103.    Koryeo hereby repeats and realleges paragraphs 1 through 103 as though fully set forth herein.

104.    Defendants undertook the foregoing acts of interference with Koryeo's employee relationships and, upon information and belief, misuse of Koryeo's confidential and proprietary information, in order to gain an unfair competitive edge over Koryeo.

105.     Defendants willfully undertook the foregoing acts with knowledge of and disregard for Koryeo's rights, and with the intention of causing harm to Koryeo and benefitting Defendants.

106.     As a result of Defendants' unfair competition, Koryeo has been injured and faces irreparable injury, and Koryeo is threatened with losing additional customers, its competitive advantage and goodwill in amounts which may be impossible to determine, unless Defendants are permanently enjoined and restrained by order of this Court.

107.     WHEREFORE, Koryeo demands judgment against the Defendants jointly, severally and in the alternative, in an amount to be determined at trial, together with injunctive relief, compensatory damages, punitive damages, interest, costs, attorneys' fees and such other relief as to the Court may seem just and proper.

## COUNT X

### UNJUST ENRICHMENT
### (AGAINST ALL DEFENDANTS)

108.     Koryeo hereby repeats and realleges paragraphs 1 through 107 as though fully set forth herein.

109.     A party is unjustly enriched if it received a benefit and retention of that benefit without payment would be unjust.

110.     Defendants are unjustly enriched in this case because they interfered with Koryeo's business relationships with customers, and, upon information and belief, misappropriated Koryeo's confidential information, and Defendants are now benefitting from that wrongful conduct, which is unjust.

111.     As a result of Defendants' unjust enrichment, Koryeo has been injured and faces irreparable injury, and Koryeo is threatened with losing additional customers, its competitive

advantage and goodwill in amounts which may be impossible to determine, unless Defendants are permanently enjoined and restrained by order of this Court.

112.     WHEREFORE, Koryeo demands judgment against the Defendants jointly, severally and in the alternative, in an amount to be determined at trial, together with injunctive relief, compensatory damages, punitive damages, interest, costs, attorneys' fees and such other relief as to the Court may seem just and proper.

### COUNT XI

### CIVIL CONSPIRACY
### (AGAINST ALL DEFENDANTS)

113.     Koryeo hereby repeats and realleges paragraphs 1 through 112 as through fully set forth herein.

114.     Defendants entered into an illegal scheme or plan with the common purpose to solicit and raid Koryeo's customers, upon information and belief misappropriate Koryeo's confidential and proprietary information, destroy Koryeo's goodwill and tortuously interfere with Koryeo's prospective economic advantage.

115.     In doing so, Defendants employed unlawful or improper means to achieve their objectives.

116.     Defendants acted in concert to commit these various unlawful acts.

117.     As a result of Defendants' civil conspiracy, Koryeo has been injured and faces irreparable injury, and Koryeo is threatened with losing additional customers, its competitive advantage and goodwill in amounts which may be impossible to determine, unless Defendants are permanently enjoined and restrained by order of this Court.

118.     WHEREFORE, Koryeo demands judgment against the Defendants jointly, severally and in the alternative, in an amount to be determined at trial, together with injunctive

relief, compensatory damages, punitive damages, interest, costs, attorneys' fees and such other relief as to the Court may seem just and proper.

## COUNT XI

### REQUEST FOR EQUITABLE RELIEF – INJUNCTIVE RELIEF (AGAINST ALL DEFENDANTS)

119.     Koryeo hereby repeats and realleges paragraphs 1 through 118 as though fully set forth herein.

120.     An actual controversy exists between Koryeo and Defendants and this Court may declare the rights and other legal relations of any party hereto pursuant to 28 U.S.C. §§ 2201 and 2202.

121.     Koryeo requests equitable relief in the form of temporary restraint, preliminary injunction and permanent injunction (a) enjoining Defendants from utilizing Koryeo's confidential and proprietary information, (b) enjoining Defendants from soliciting Koryeo's customers to cease purchasing products from Koryeo and/or purchase products from any company other than Koryeo, (c) ordering Defendants to return all of Koryeo's confidential and proprietary information (and destroy any copies of such information), and (d) granting such other further relief as may be just and proper.

122.     Koryeos will suffer immediate and irreparable harm if equitable relief is not granted.

123.     Defendants will not be harmed if enjoined from engaging in continued unfair and unlawful conduct.

124.     Koryeo enjoys a high probability of success on the merits.

125.     If Defendants are permitted to continue engaging in the aforementioned unlawful conduct, then Koryeo's business relations with its customers, built up over years of effort and investment, will be ruined.

126.     WHEREFORE, Koryeo demands injunctive relief in the form of temporary restraint, preliminary injunction and permanent injunction, as well as judgment against the Defendants jointly, severally and in the alternative, in an amount to be determined at trial, together with injunctive relief, compensatory damages, punitive damages, interest, costs, attorneys' fees and such other relief as to the Court may seem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Koryeo prays that:

1. An injunction, issue, preliminary until final hearing and permanently thereafter:

    a. Enjoining Defendants from utilizing Koryeo's confidential and proprietary information,

    b. Enjoining Defendants from soliciting Koryeo's customers to cease purchasing products from Koryeo and/or purchase products from any company other than Koryeo,

    c. Ordering Defendants to return all of Koryeo's confidential and proprietary information (and destroy any copies of such information), and

    d. Awarding Koryeo such other and further injunctive relief as this Court may deem just and proper.

2. Koryeo be granted an accounting compelling Defendants to account for all profits, compensation, remunerations and/or benefits obtained as a result of engaging in the aforementioned conduct.

3. Koryeo be awarded damages from the Defendants, jointly and severally, including:

    a. Compensatory damages to be determined at trial;

    b. Punitive and/or exemplary damages on all common law claims as permitted by statute;

    c. Pre-judgment and post-judgment interest in an amount to be determined at trial; and

    d. The costs and attorney's fees incurred by Koryeo in bringing this action;

4. Koryeo be awarded damages for unjust enrichment resulting from the detriment suffered by Koryeos and the benefits received and appreciated by Defendants; and

5. Awarding such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Koryeo hereby demands a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Joseph M. Labuda is hereby designated as trial counsel for Koryeo in the above matter.

## CERTIFICATION – NO OTHER ACTIONS

Koryeo, by its attorneys, hereby certifies that the matter in controversy is not the subject of any other action pending in any court and is likewise not the subject of any pending arbitration proceeding. Koryeo further certifies that it has no knowledge of any contemplated action or arbitration proceeding regarding the subject matter of this action and it is not aware of any other parties who should be joined in this action.

Dated: December 20, 2019

                **MILMAN LABUDA LAW GROUP PLLC**

                /s/ Joseph M. Labuda
                Joseph M. Labuda, Esq.

Attorneys for Koryeo
3000 Marcus Ave., Suite 3W8
Lake Success, NY 11042
(516) 328-8899
joe@mllaborlaw.com

## VERIFICATION OF STEVE HONG

I, **STEVE HONG**, of full legal age, am the owner and President of Koryeo. I hereby verify that I have reviewed all of the allegations contained in the Verified Complaint and verify the truth of same. If any of the foregoing is willfully false I am subject to punishment.

December 20, 2019

Steve Hong