UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KORYEO INTERNATIONAL CORP.　　　　) <br> 　　　　　　　　　　　　　　　　　　　) <br> 　　　　　　　　Plaintiff,　　　　　　) <br> 　　　　　　　　　　　　　　　　　　　) <br> 　　　　　　　　v.　　　　　　　　　　) <br> 　　　　　　　　　　　　　　　　　　　) <br> TAE HEE KIM, MARTIN LEE, and SUN BOK　) <br> LEE,　　　　　　　　　　　　　　　　) <br> 　　　　　　　　　　　　　　　　　　　) <br> 　　　　　　　　Defendants.　　　　　) | Docket No.: |

**PLAINTIFF's MEMORANDUM OF LAW SUBMITTED IN SUPPORT OF ITS APPLICATION FOR AN ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## INTRODUCTION

Plaintiff Koryeo International Corp. ("Koryeo"), by and through its attorneys, Milman Labuda Law Group LLC, submits this memorandum of law in support of its Verified Complaint for Declaratory and Injunctive Relief and seeking an Order temporarily restraining and plreiminary and permanently enjoining Defendants Tae Hee Kim ("Kim"), Martin Lee ("Martin"), and Sun Bok Lee ("Sun") (collectively "Defendants") as follows:

a. Failing to return and/or continuing to utilize Plaintiff's confidential and proprietary information;

b. Soliciting Plaintiff's customers to cease doing business with Plaintiff and/or purchase products from any company other than Plaintiff.

As noted below, Defendants have unlawfully obtained Koryeo's confidential and proprietary information in order to solicit Koryeo's customers to cease purchasing products from Koryeo and to order such products from Defendants' current employer. Defendants continue to utilize Koryeo's confidential and proprietary obtained outside of their authorization and/or in excess of their authority.

Given the immediate and irreparable harm to Koryeo's business relationships and goodwill that it stands to sustain, Koryeo now moves this Court for an Order pursuant to Fed. R. Civ. P. 65 and L. Civ. R. 65.1 to temporarily restraining and preliminary and permanently enjoining Defendants from taking any further action in contravention of their obligations to Koryeo and/or relevant law

## FACTS

The pertinent facts and relevant exhibits are set forth at length in the accompanying Affidavit of Steve Hong sworn to on the 20th day of December 2019 ("Hong Affid.").

Koryeo is in the business of importing and distributing Asian food products in New Jersey and surrounding states including, but not limited to, New York, Connecticut and Pennsylvania.

1

("Hong Affid." ¶ 3). It was incorporated in New York in 1975 and moved its operation from Brooklyn to New Jersey in 2015. ("Hong Affid." ¶ 4)

Defendants were employed by Koryeo as salespersons. ("Hong Affid." ¶ 5) Defendants all resigned their employment in October 2019 without prior notice. ("Hong Affid." ¶ 6) Specifically, Kim and Martin resigned on October 11, 2019 and Sun resigned on October 10, 2019. ("Hong Affid." ¶ 6) Defendants all resigned to commence employment as salespersons with one of Koryeo's competitors, Austin Meat Company, Inc. d/b/a Austin Meat & Seafood Company ("Austin"). ("Hong Affid." ¶ 7)

During their employment at Koryeo, Defendants were exposed to Koryeo's confidential and proprietary information, such as customer lists, sales tactics, pricing, trade secrets, financial information and general business strategies. ("Hong Affid." ¶ 8) For example, Defendants had full access to Koryeo's QuickBooks files which contained its inventory, customer contact lists, vendor lists, pricing information, sales information and statistics, accounting information along with other similar confidential and proprietary information. ("Hong Affid." ¶ 9)

As part of their employment, Defendants were granted access to Koryeo's QuickBooks files to perform their salesperson duties. ("Hong Affid." ¶ 10) Specifically, Defendants utilized remote computer access through "Teamview" software to access the QuickBooks files contained on their office computers. ("Hong Affid." ¶ 10) However, Koryeo utilized several different security measures to ensure and safeguard the confidentiality of its confidential and proprietary information contained in its QuickBooks files. ("Hong Affid." ¶ 11). These measures include, but are not limited to, the following security barriers:

  a. Koryeo's premises are protected by a security alarm system;
  b. All employees are required to utilize a key-card to access Koryeo's premises;

      c. Remote access to Koryeo's computers was password protected and only individuals with such passwords could access their work computers remotely; and

      d. Koryeo's QuickBooks files (e.g. customer lists and pricing information) were password protected and only individuals with such passwords could access such files.

("Hong Affid." ¶ 11)

    Prior to their resignation and for some time thereafter, Defendants accessed, downloaded and/or copied Koryeo's confidential and proprietary information (i.e. QuickBooks files) without authorization and/or in excess of their authorized access for their personal gain at the detriment of Koryeo. ("Hong Affid." ¶ 12) For example, on October 11, 2019, the early morning before Kim resigned her employment, she remotely accessed Koryeo's Quick Books accounting system for nearly three (3) hours from 1:15 a.m. until 4:01 a.m.[1] ("Hong Affid." ¶ 12, Exhibit "A") This was unusual, as Kim normally did not normally remotely access Koryeo's information for more than a few minutes at a time (approximately 5 to 30 minutes). ("Hong Affid." ¶ 12) After her resignation, Kim accessed the files again on October 11, 2019 at 11:12 a.m. and again on October 12, 2019 at 1:06 p.m. ("Hong Affid." ¶ 12, Exhibit "A").

    Kim accessed Koryeo's Quick Books accounting system on October 11 and 12, 2019 in order to improperly download Koryeo's confidential and proprietary information for later use, knowing that she was resigning in order to immediately commence employment with Austin in direct competition with Koryeo. ("Hong Affid." ¶13 ) Sun and Martin also participated in, assisted and/or had knowledge of the scheme to obtain and utilize Koryeo's confidential and proprietary information in order to solicit Koryeo's customers to cease purchasing products from Koryeo and instead purchase such products from Austin. ("Hong Affid." ¶ 14)

---

[1] All times referenced in Exhibit A are based on Central European Time/Central European Summer Time (CET/CEST).

Furthemore, based on documentary evidence, Defendants have solicited Koryeo's customers to cease purchasing products from Koryeo and instead purchase such products from Austin. ("Hong Affid." ¶ 15) Specifically, Defendants scheme has already been effective, in that Koryeo's customers have applied to Austin's credit department to establish purchasing accounts, listing Koryeo as a credit referral. ("Hong Affid." ¶ 16) For example, Austin sent a credit referral request to Koryeo for Ryan Luck Fish Inc. on October 17, 2019 and another request for 219 Jamaica Fish Market Inc. on October 21, 2019. ("Hong Affid." ¶ 16, Exhibit "B"). Since then, both customers have reduced their product orders from Plaintiff significantly. ("Hong Affid." ¶ 16).

Koryeo has been damaged by reduction in sales to several customers who it believes were solicited by Defendants to purchase products from Austin. ("Hong Affid." ¶ 17) Specifically, sales have been reduced for the customers including, but not limited to the following as indicated below:

| Customer | Sales: 9/11/19 – 10/11/19 | Sales: 10/11/19 – 11/11/19 | % Sales Reduction | Defendant Who Managed Account At Koryeo |
|---|---|---|---|---|
| Ryan Luck Fish Inc. | $4,719 | $1,536 | 67.45% | Tae Hee Kim |
| Southern Fish Market | $8,672 | $0 | 100% | Tae Hee Kim |
| Garden Farm Market #1 | $14,663 | $6,540 | 55.40% | Tae Hee Kim |
| Garden Farm Market #2 | $12,076 | $6,513 | 46.07% | Tae Hee Kim |
| Garden Farm Market #3 | $8,720 | $1,142 | 86.90% | Tae Hee Kim |
| Garden Farm Market #4 | $8,108 | $4,214 | 48.03% | Tae Hee Kim |
| Merrick Farm | $12,153 | $6,243 | 48.63 | Tae Hee Kim |
| 219 Jamaica Fish Market, Inc. | $19,478 | 12,862 | 33.97% | Tae Hee Kim |
| St. Ann Fish | $25,027 | $19,949 | 20.29% | Sun Bok Lee |
| Food Fair 175 | $7,727 | $4,714 | 38.99% | Sun Bok Lee |
| New Fish Plus | $10,131 | $3,053 | 69.86 | Sun Bok Lee |
| Omega Fish | $14,524 | $5,275 | 63.86% | Sub Bok Lee |
| Golden Farm Supermarket | $9,381 | $3,873.80 | 58.71% | Martin Lee |
| KCH Fish | $2,666 | $1,530 | 42.61% | Martin Lee |
| Lee's Good People | $5,741 | $3,587 | 37.52% | Martin Lee |
| Young Fish | $3,343 | $1,399 | 58.15% | Martin Lee |
| 153 Fish Market | $5,422 | $2,183 | 59.74% | Martin Lee |
| Lee K of NY | $14,441 | $3,725 | 74.21% | Martin Lee |
| Main Fish (2) | $5,803 | $1,458 | 74.88% | Martin Lee |

("Hong Affid." ¶ 17)

Based on this reduction in sales over the past month, Koryeo, is concerned about additional future sales decline due to Defendants' unscrupulous conduct. ("Hong Affid." ¶ 18) In fact, Defendants' unlawful theft and Defendants' continued use of Koryeo's confidential and proprietary information (e.g. sales and vendor information) will allow Austin to copy Koryeo's products and undercut Koryeo's pricing in order to destroy Koryeo's business. ("Hong Affid." ¶ 18) Accordingly, Koryeo is in danger of immediate and irreparable harm. ("Hong Affid." ¶18 )

## ARGUMENT

Koryeo seeks the entry of a TRO and preliminary and permanent injunctive relief pursuant to Fed. R. Civ. P. 65. The grant or denial of a preliminary injunction rests in the sound discretion of the trial court. To prevail on a motion for a preliminary injunction, the moving party must establish the following: (i) a substantial likelihood of success on the merits; (ii) that it will suffer irreparable harm if the injunction is denied; (iii) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (iv) that the public interest favors such relief. ACE Am. Ins. Co. v. Wachovia Ins. Agency Inc., 2009 U.S. App. LEXIS 830 (3d Cir. Jan. 15, 2009); Kos Pharms. Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004).

Koryeo meets each and every requirement for injunctive relief.  Therefore, the instant application should be granted.

**A.  Temporary Restraints Are Necessary To Prevent Immediate, Substantial And Irreparable Harm.**

Koryeo will experience immediate, substantial and irreparable harm if temporary restraints are not imposed on Defendants. In order to demonstrate irreparable harm, a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). In other

words, a preliminary injunction must be the only way of protecting the plaintiff from harm and may not be granted to relieve purely economic harm. Id.; Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." Kos Pharms., 369 F.3d at 726 quoting Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998).

Here Defendants have engaged in an ongoing, coordinated, concerted and systematic recruitment effort to maliciously solicit Koryeo's customers, thereby injuring Koryeo and benefitting Defendants. Defendants have also misappropriated Koryeo's confidential and proprietary information including, but not limited to, customer contacts, customer pricing information, business plans and unique operational methods and techniques, which Koryeo amassed through considerable effort and expense.   Defendants now use or inevitably will use this information to their own unfair advantage.

If Defendants are allowed to continue their campaign of soliciting Plaintiff's customer, a campaign wrought with malice, then Koryeo's business would be destroyed. Koryeo will not be able to conduct business normally with all of its customers being constantly solicited by Defendants' recruitment efforts. Immediate and irreparable harm will include loss of customer relationships, loss of control of reputation and loss of goodwill which all have been amassed by Koryeo for several decades.  Such harm is substantial and irreparable through monetary relief— an injunction is needed.  Moreover, this harm is currently occurring, and will continue to occur absent an injunction.

For these reasons, Koryeo has met the first prong of the analysis and Defendants should be restrained from inflicting further damage (i.e. soliciting Koryeo's employees and from misappropriating and using Koryeo's proprietary and confidential information).

6

**B. Koryeo Has Made A Preliminary Showing Of Reasonable Probability of Ultimate Success on The Merits**

To establish a likelihood of success on the merits, a litigant need not demonstrate that his entitlement to a final decision after trial is free from doubt. Rather, plaintiff must show a "reasonable probability of eventual success in the litigation." Central Jersey Freightliner, Inc., v. Freightliner Corp., 987 F. Supp. 289, 295 (D.N.J. 1997). A preliminary injunction finding is based on an assessment of the likelihood that a party would succeed on the merits, and "neither constitutes nor substitutes for an actual finding that [litigants]have *succeeded* on the merits and are entitled to permanent relief." American Civil Liberties Union of New Jersey v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 (3d Cir. 1996); Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990); *see also* Wright & Miller, Federal Practice and Procedure, § 2948 (while "courts use a bewildering variety of formulations of the need for showing some likelihood of success … courts agree that plaintiff must present a prima facie case but need not show that he is certain to win.")

As outlined in the facts section above, Koryeo has significant evidence that Defendants engaged in a scheme to misappropriate its confidential and proprietary information to solicit its customers to cease doing business with Koryeo. Brashly, Austin even sent requests for credit referrals for two (2) such customers who Defendants solicited to purchase goods from Austin instead of Koryeo. Furthermore, Koryeo has seen substantial decreases in sales to accounts in which Defendants' were salespersons during their employment with Koryeo. This evidence alone is enough to establish a preliminary showing of reasonable probability of success on the merits in this action.

1. **Violation of the Computer Fraud and Abuse Act**

CFAA makes it unlawful to "intentionally access[ ] a computer without authorization ... and thereby obtain[ ] ... information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). To

maintain a civil action for a CFAA violation, a plaintiff must allege conduct involving one of five enumerated factors. Id. § 1030(g). One such factor specified that the alleged unlawful computer access must have caused "a loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).

Koryeo can establish such a claim. Specifically, by accessing and obtaining data and information on Koryeo's protected computers during their employment, Plaintiffs exceeded their intended authority because they downloaded such information for use in violating their duty of loyalty to Koryeo. Furthermore, they accessed and obtained the data and information without authorization after their employment with Koryeo ended. In addition, the unlawful access has caused loss of sales revenue to Koryeo far in excess of $5,000 as outlined above.

2. **Misappropriation and Misuse of Trade Secrets and Confidential Information (New Jersey Trade Secrets Act)**

The New Jersey Trade Secrets Act ("NJTSA") requires a plaintiff "to demonstrate (1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret." Par Pharm., Inc. v. QuVa Pharma, Inc., 764 F. App'x 273, 278 (3d Cir. 2019). At the motion to dismiss stage, Plaintiff need not plead the precise information that constitutes the trade secret; nor is Plaintiff "required to make specific allegations regarding a defendant's use or disclosure of trade secret to state a *prima facie* misappropriation of trade secrets claim." Corp. Synergies Grp., LLC v. Andrews, 2019 U.S. Dist. LEXIS 135293, 2019 WL 3780098, at *5 (D.N.J. Aug. 12, 2019); Reckitt Benckiser Inc. v. Tris Pharma, Inc., No. 09-3125, 2011 U.S. Dist. LEXIS 19713, 2011 WL 773034, at *3 (D.N.J. Feb. 28, 2011). Moreover, courts recognize "that information concerning

8

Defendant[']s alleged use of the trade secret may, at this juncture, be solely within the Defendant[']s knowledge." Reckitt Benckiser, 2011 U.S. Dist. LEXIS 19713, 2011 WL 773034, at *5.

Here, Defendants accessed Koryeo's books files and records, including, but not limited to its QuickBooks files. Such files contained trade secrets such as inventory, customer contact lists, vendor lists, pricing information, sales information and statistics, accounting information along with other similar non-public, business information are highly confidential. Furthermore, such information has independent economic value that is not accessible to competitors (e.g. Defendants' current employer). In fact, Koryeo has spent significant sums of both financial and human resources to develop and maintain such information, which is of great value to its competitors including Defendants' current employer. As discussed in the facts section, Defendants subverted their obligations and exceeded their access to unscrupulously misuse confidential and proprietary trade secrets which has damaged Koryeo's business. In fact, this scheme has already worked and several of Koryeo's customers who were previously serviced by Defendants (during their employment) have significantly reduced their product orders with Koryeo.

### 3. Tortious Interference With Prospective Economic Advantage

To prove a claim of tortious interference with economic advantage, a "plaintiff must show that it had a reasonable expectation of economic advantage that was lost as a direct result of [a] defendant['s] malicious interference, and that it suffered losses thereby." Lamorte Burns & Co., Inc., 167 N.J. 285, 305-06 (2001).

In the instant action, Koryeo established and maintained valid relationships and the expectancy of the continuation of such relationships with customers. Such relationships were established over several decades that Koryeo was in business. Furthermore, Koryeo had a reasonable expectation that such relationships would continue and not be unjustifiably disrupted

by the unauthorized use of its proprietary and confidential information. As a result of Defendants employment at Koryeo, they were aware and remain aware of Koryeo's customer relationships and/or expectancies, yet intentionally and with malice, unjustifiably solicited Koryeo's customers to cease doing business with Koryeo and purchase goods from their current employer. As a result of this conduct, Koryeo has lost significant business from customers who have ceased, in whole or in part, doing business with Koryeo.

   4. **Breach of Duty of Loyalty**

Koryeo's employees, including Defendants, owed Koryeo a duty of loyalty. Quinlan v. Curtiss-Wright Corp., 204 N.J. 239, 260-61 (2010) (recognizing that employees owe their employers a common law duty of loyalty). This duty obligates the employees to "safeguard confidential information they have learned through their employment relation" and it precludes them "from sharing that information with unauthorized third parties." Id. at 260. It also requires employees to have "undivided loyalty" to their employer. Mega Brands America, Inc. v. Cerillo, 2014 N.J. Super. Unpub. LEXIS 2990 at *47 (Ch. Div. Dec. 5, 2014) citing Auxton Computer Enterprise, Inc. v. Parker, 174 N.J. Super. 418, 423-24 (App Div. 1980).

Koryeo's claim of Defendants' breach of duty of loyalty does not require an oral or written agreement to be viable. Tech. Dynamics, Inc. v. Master, 2019 N.J. Super. Unpub. LEXIS 445 *19-20 (2019). The Supreme Court recognized in Lamorte Burns & Co., Inc., v. Walters, 167 N.J. 285, 302, 770 A.2d 1158 (2001), that "[l]oyalty from an employee to an employer consists of certain very basic and common sense obligations. An employee must not while employed act contrary to the employer's interest." An employer may "prove a prima facie case of an employee's breach of the duty of loyalty not only by showing that the employee directly competed with the employer while employed, but also by showing that the employee while employed assisted the employer's

competitor." <u>Id</u>. at 303 citing <u>Cameco, Inc. v. Gedicke</u>, 157 N.J. 504, 517, 724 A.2d 783 (1999). "Although an employee has the right to make preparations to start a competing business, the employee may not breach the undivided duty of loyalty he or she owes to his or her employer *while still employed* by soliciting the employer's customers or engaging in other acts of secret competition." *Id.* (emphasis added) citing <u>Platinum Mgmt., Inc. v. Dahms</u>, 285 N.J. Super. 274, 303, 666 A.2d 1028 (Law. Div. 1995).

Notwithstanding their duty of loyalty, while still employed by Koryeo, Defendants were actively working against Koryeo's interests by accessing and improperly downloading Koryeo's proprietary and confidential information for use once they terminated their employment with Koryeo and commenced employment with a competitor. Defendants have used and/or will inevitably use Koryeo's confidential and proprietary information against Koryeo for their own benefit. Such conduct violates the duty of loyalty because it breaches the obligation of undivided loyalty to Koryeo and breaches the obligation to safeguard proprietary and confidential information.

5. **Breach of Fiduciary Duty**

Defendants, as salespeople with access to highly sensitive proprietary and confidential information, held a position of trust and confidence at Koryeo. Accordingly, they owed a fiduciary duty to their employer, Koryeo. See <u>Rodriguez v. Hudson County Collision Co.</u>, 296 N.J. Super. 213, 220 (App. Div. 1997) citing <u>Weinisch v. Sawyer</u>, 123 N.J. 333, 340 (1991) (stating that insurance agents owe a fiduciary duty to the insurance company with which they are employed); see also <u>F.G. v. MacDonell</u>, 150 N.J. 550, 563 (1979) ("A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship."). By virtue of this duty, Defendants were prohibited

from acting in a disloyal manner, or in any way inconsistent with the trust relationship between Koryeo and its employees.

Notwithstanding this duty, while still employed by Koryeo and thereafter, Defendants were actively working against Koryeo's interests by accessing and improperly downloading Koryeo's proprietary and confidential information for use once they terminated their employment with Koryeo and commenced employment with a competitor. Defendants have used and/or will inevitably use Koryeo's confidential and proprietary information against Koryeo for their own benefit. Such conduct breaches the fiduciary duty they owed Koryeo because it shows that the Defendants placed their interests above those of their principal, thereby injuring their principal, namely, Koryeo.

6. **Misuse of Confidential Proprietary Information**

The Courts of New Jersey have held "specific information provided to defendants by their employer, in the course of employment, and for the sole purpose of servicing plaintiff's customers, is legally protectable as confidential and proprietary information." Family Karate Center, Inc. v. Master Peters Academy, 2013 N.J. Super. Unpub. LEXIS 1426 (App. Div. 2013) citing Lamorte Burns & Co. v. Walters, 167 N.J. 285 (2001). Such proprietary information may include customer information. Fox v. Millman, 210 N.J. 401, 426 (2012).

In assessing whether misuse of confidential and proprietary information has occurred, the Courts will assess the following factors:

(a) the extent to which the information is known outside the employer's business;

(b) the extent to which it is known by employees and others involved in the employer's business;

(c) the extent of measures taken by the employer to guard the secrecy of the information;

(d) the value of the information to the employer and to his competitors;

(e) the amount of money or effort expended by the employer in developing the information; and

(f) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Hammock ex rel. Hammock v. Hoffman-LaRoche, Inc., 142 N.J. 356, 384 (1995).

In this case, upon information and belief, the Defendants misappropriated QuickBooks files which contained inventory, customer lists, vendor lists, pricing information, sales information and statistics, accounting information along with other similar information that is unique to Koryeo. This information has been developed by Koryeo over long and expensive years of sales and marketing efforts, operational trial and error, and detailed planning. Obviously, the information is of inestimable value to Koryeo; it could not operate without the information. The value to a competitor who acquires such information for free is similar. Koryeo has several security measures in place to ensure and safeguard confidentiality of this information and only provided access to such information to Defendants for use in their capacity as salespeople when working for Koryeo. Because of unique business models and operational techniques, the information is not known to others outside of Koryeo's employ and could not be easily duplicated. The information in question was closely held and is entitled to protection under the law.

As such, Defendants' use of such information is unlawful and must be stopped.

7. **Conversion**

"Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Restatement (Second) of Torts § 222A;* see Advanced

Enterprises Recycling, Inc. v. Bercaw, 376 N.J. Super 153, 161-163 (App. Div. 2005) citing Commercial Insurance Co. v. Apgar, 111 N.J. Super 108, 114 (Law Div. 1970).

While it is true that New Jersey courts are hesitant to find conversion of intangible property, such as trade secrets, see SCS Healthcare Mktg., LLC v. Allegran USA, Inc., 2012 N.J. Super. Unpub LEXIS 2704 at *19-21 (Ch. Div. Dec. 7, 2012), upon information and belief, Defendants have taken confidential property, such as customer lists and pricing information, which they have used or inevitably will use against Koryeo. Such conduct constitutes conversion because they have exercised dominion and control over such property.

8. **Unfair Competition**

An agent must not take "unfair advantage of his position in the use of information or things acquired by him because of his position as agent or because of the opportunities which his position affords." Lamorte Burns & Co. v. Walters, 167 N.J. 285 (2001), *citing, Restatement (Second) of Agency § 395*. Unfair competition, accomplished through an employee's misappropriation of the employer's confidential and proprietary information, is prohibited. Id. at 309.

Defendants have engaged in unfair competition because they have used Koryeo's confidential information, including client lists, sales tactics, and general business strategy, for their own benefit in an effort to compete against Koryeo. As a result, Koryeo has been economically damaged and Defendants have an unfair advantage.

9. **Unjust Enrichment**

To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust. VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994) (citations omitted). In this case, Defendants are unjustly enriched because they misappropriated proprietary and confidential information from Koryeo and are now

benefiting from that wrongful conduct by using it at Austin, which is unjust. Accordingly, Defendants should be enjoined from soliciting Koryeo's customers and from using any of Koryeo's proprietary and confidential information.

**10. Civil Conspiracy**

A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Morgan v. Union Cnty Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364, 633 A.2d 985 (App. Div. 1993), *certif. denied*, 135 N.J. 468, 640 A.2d 850 (1994). The essence of a civil conspiracy "claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give a right of action.'" Id. (internal quotation marks omitted) (quoting *Morgan, supra*, 268 N.J. Super. at 365)). A civil conspiracy is not the gravamen of the action and only serves to establish joint liability between the defendants. Morgan*, supra*, 268 N.J. Super. at 364; Landriani v. Lake Mohawk Country Club, 26 N.J. Super. 157, 159, 97 A.2d 511 (App. Div. 1953) (citation omitted). "The actionable element is the tort which the defendants agreed to perpetrate and which they actually committed." Landriani*, supra*, 26 N.J. Super. at 159.

Here, as outlined above, Defendants have perpetrated and committed several torts. As there are three (3) Defendants who have jointly carried out this scheme to defraud Koryeo which has resulted in damages to Koryeo, they must be held jointly liable for all damages.

**C. Monetary Damages Do Not Afford An Adequate Remedy.**

Only injunctive relief will serve to stop the Defendants from continuing to utilize Koryeo's confidential and proprietary information in order to solicit Koryeo's customers to stop doing business with Koryeo.

15

**D.  Harm to Koryeo Greatly Outweighs the Harm to Defendants In Favor Of Injunctive Relief.**

Furthermore, temporary relief requires a balancing of the relative hardship to the parties in granting or denying relief. Crowe, *supra*, 90 N.J. at 134. Here, Koryeo simply moves the Court for temporary and preliminary restraints that would enjoin the Defendants from continuing to solicit Koryeo's customers to stop doing business with Koryeo and to return all confidential and proprietary information. Such restraints would protect Koryeo from harm. Koryeo is not asking the Court to take anything away from the Defendants, only that they stop violating the law. Defendants are still permitted to find their own customers and engage in fair competition. In contrast, Koryeo is at immediate risk of losing additional customer relationships and goodwill which took decades to develop. Koryeo is merely seek protection from losing its business and from competitors using its confidential and proprietary information until the matter can be adjudicated on the merits.  If the Order is granted, Defendants will lose nothing.  If the Order is not granted, Koryeo stands at risk of immediate, substantial and irreparable harm.

Therefore, the instant application should be granted.

**E. Public Interest Favors Granting the Injunction**

The issuance of a preliminary injunction serves the public interest. The final factor the Court must consider is whether issuance of an injunction would be in the public's interest. A plaintiff's success in establishing harm to the public interest is intricately tied to its establishment of the other three necessary elements of injunctive relief. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 26-27, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

Here, the public has an interest in protecting Koryeo's confidential information and business goodwill. *See Ingersoll-Rand Co.*, 110 N.J. at 639 (recognizing the public's interest "in

safeguarding fair commercial practices and in protecting employers from theft or piracy of trade secrets, confidential information, or, more generally, knowledge and techniques in which the employer may be said to have a proprietary interest"). Accordingly, Koryeo satisfies this factor of the analysis.

## CONCLUSION

Based on the above, the Court should issue an order (a) enjoining and restraining Defendants from utilizing Koryeo's confidential and proprietary information, (b) enjoining and restraining Defendants from soliciting Koryeo's customers to purchase products from any company other than Koryeo, (c) ordering Defendants to return all of Koryeo's confidential and proprietary information (and destroy any copies of such information), and (d) granting such other and further relief as may be just and proper.

Dated: December 20, 2019                    Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

/s/ Joseph M. Labuda
Joseph M. Labuda, Esq.
Attorneys for Koryeo
3000 Marcus Ave., Suite 3W8
Lake Success, NY 11042
(516) 328-8899
joe@mllaborlaw.com