UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KORYEO INTERNATIONAL CORP. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TAE HEE KIM, MARTIN LEE, and SUN BOK ) <br> LEE, ) <br> ) <br> Defendants. ) <br> ) | Docket No.: <br><br> **AFFIDAVIT OF STEVE HONG** |

STEVE HONG, being duly sworn, deposes and says:

1. I am the owner and President of Koryeo International Corp. I have been the President of Koryeo from 1991 through the present.

2. I submit this affidavit in support of the Order to Show Cause by Plaintiff Koryeo International Corp. ("Koryeo") for an order enjoining and restraining Defendants from utilizing Plaintiff's confidential and proprietary information, enjoining and restraining Defendants from soliciting Plaintiff's customers to purchase products from any company other than Plaintiff, ordering Defendants to return all of Plaintiff's confidential and proprietary information (and destroy any copies of such information, and granting such other and further relief as may be just and proper.

**Koryeo's Operations**

3. Koryeo is in the business of importing and distributing Asian food products in New Jersey and surrounding states including, but not limited to, New York, Connecticut and Pennsylvania.

4. Koryeo was incorporated in New York in 1975. It moved its operation from Brooklyn to New Jersey in 2015.

**Defendants In General**

5. Tae Hee Kim ("Kim"), Martin Lee ("Martin") and Sun Bok Lee ("Sun") (collectively "Defendants") were employed by Koryeo as salespersons.

6. Defendants all resigned their employment in October 2019 without prior notice. Specifically, Kim and Martin resigned on October 11, 2019 and Sun resigned on October 10, 2019.

7. Defendants all resigned to commence employment as salespersons with one of my competitors, Austin Meat Company, Inc. d/b/a Austin Meat & Seafood Company ("Austin").

**Defendants' Scheme to Steal Customers From Koryeo**

8. During their employment at Koryeo, Defendants were exposed to Koryeo's confidential and proprietary information, such as customer lists, sales tactics, pricing, trade secrets, financial information and general business strategies.

9. For example, Defendants had full access to Plaintiff's QuickBooks files which contained its inventory, customer contact lists, vendor lists, pricing information, sales information and statistics, accounting information along with other similar confidential and proprietary information.

10. As part of their employment, Defendants were granted access to Plaintiff's QuickBooks files to perform their salesperson duties. Specifically, Defendants utilized remote computer access through "Teamview" software to access the QuickBooks files contained on their office computers.

11. Plaintiffs utilized several different security measures to ensure and safeguard the confidentiality of its confidential and proprietary information contained in its QuickBooks files. These measures include, but are not limited to, the following security barriers:

    a. Plaintiff's premises are protected by a security alarm system;

  b. All employees are required to utilize a key-card to access Plaintiff's premises;

  c. Remote access to Plaintiff's computers was password protected and only individuals with such passwords could access their work computers remotely; and

  d. Plaintiff's QuickBooks files (e.g. customer lists and pricing information) were password protected and only individuals with such passwords could access such files.

12. Prior to their resignation and for some time thereafter, Defendants accessed, downloaded and/or copied Plaintiff's confidential and proprietary information (i.e. QuickBooks files) without authorization and/or in excess of their authorized access for their personal gain at the detriment of Plaintiff. For example, on October 11, 2019, the early morning before Kim resigned her employment, she remotely accessed Koryeo's Quick Books accounting system for nearly three (3) hours from 1:15 a.m. until 4:01 a.m.[1] This was unusual, as Kim normally did not normally remotely access Koryeo's information for more than a few minutes at a time (approximately 5 to 30 minutes). After her resignation, Kim accessed the files again on October 11, 2019 at 11:12 a.m. and again on October 12, 2019 at 1:06 p.m. (See Kim's Quick Books log-in reports attached hereto as Exhibit "A").

13. It is my belief that Kim accessed Koryeo's Quick Books accounting system on October 11 and 12, 2019 in order to improperly download Koryeo's confidential and proprietary information for later use, in connection with her employment with Austin in direct competition with Koryeo.

14. It is also my belief that Sun and Martin also participated in, assisted and/or had knowledge of the scheme to obtain and utilize Koryeo's confidential and proprietary information in order to solicit Koryeo's customers to cease purchasing products from Koryeo and instead purchase such products from Austin.

---

[1] All times referenced in Exhibit A are based on Central European Time/Central European Summer Time (CET/CEST).

15. Furthermore, based on evidence I have reviewed, prior to their resignation and through the present, Defendants have solicited Koryeo's customers to cease purchasing products from Koryeo and instead purchase such products from Austin.

16. Specifically, Defendants scheme has already been effective, in that Koryeo's customers have applied to Austin's credit department to establish purchasing accounts, listing Koryeo as a credit referral. For example, Austin sent a credit referral request to Koryeo for Ryan Luck Fish Inc. on October 17, 2019 and another request for 219 Jamaica Fish Market Inc. on October 21, 2019. (See credit referral requests attached hereto as Exhibit "B"). Both Ryan Luck Fish Inc. and Jamaica Fish Market Inc. were Koryeo's customers. Since then, both customers have reduced their product orders from Plaintiff significantly.

**Damage to Koryeo's Business As A Result of Defendants' Schemes**

17. Furthermore, Koryeo has been damaged by reduction in sales to several customers who, upon information and belief, were solicited by Defendants to purchase products from Austin. Specifically, sales have been reduced for the customers including, but not limited to the following as indicated below:

| Customer | Sales: 9/11/19 – 10/11/19 | Sales: 10/11/19 – 11/11/19 | % Sales Reduction | Defendant Who Managed Account At Koryeo |
|---|---|---|---|---|
| Ryan Luck Fish Inc. | $4,719 | $1,536 | 67.45% | Tae Hee Kim |
| Southern Fish Market | $8,672 | $0 | 100% | Tae Hee Kim |
| Garden Farm Market #1 | $14,663 | $6,540 | 55.40% | Tae Hee Kim |
| Garden Farm Market #2 | $12,076 | $6,513 | 46.07% | Tae Hee Kim |
| Garden Farm Market #3 | $8,720 | $1,142 | 86.90% | Tae Hee Kim |
| Garden Farm Market #4 | $8,108 | $4,214 | 48.03% | Tae Hee Kim |
| Merrick Farm | $12,153 | $6,243 | 48.63 | Tae Hee Kim |
| 219 Jamaica Fish Market, Inc. | $19,478 | 12,862 | 33.97% | Tae Hee Kim |
| St. Ann Fish | $25,027 | $19,949 | 20.29% | Sun Bok Lee |
| Food Fair 175 | $7,727 | $4,714 | 38.99% | Sun Bok Lee |
| New Fish Plus | $10,131 | $3,053 | 69.86 | Sun Bok Lee |
| Omega Fish | $14,524 | $5,275 | 63.86% | Sub Bok Lee |

| Golden Farm Supermarket | $9,381 | $3,873.80 | 58.71% | Martin Lee |
| KCH Fish | $2,666 | $1,530 | 42.61% | Martin Lee |
| Lee's Good People | $5,741 | $3,587 | 37.52% | Martin Lee |
| Young Fish | $3,343 | $1,399 | 58.15% | Martin Lee |
| 153 Fish Market | $5,422 | $2,183 | 59.74% | Martin Lee |
| Lee K of NY | $14,441 | $3,725 | 74.21% | Martin Lee |
| Main Fish (2) | $5,803 | $1,458 | 74.88% | Martin Lee |

18. Based on this reduction in sales over the past month, Koryeo, is concerned about additional future sales decline due to Defendants' unscrupulous conduct. In fact, Defendants' unlawful theft and continued use of Koryeo's confidential and proprietary information (e.g. sales and vendor information) will allow Austin to copy Koryeo's products and undercut Koryeo's pricing in order to destroy Koryeo's business. Accordingly, Koryeo is in danger of immediate and irreparable harm.

**Conclusion**

19. Because Koryeo has and will continue to suffer immediately and irreparable harm as a result of Defendants' conduct, the Court should issue an order enjoining and restraining Defendants from utilizing Koryeo's confidential and proprietary information, enjoining and restraining Defendants from soliciting Koryeo's customers to cease purchasing products from Koryeo and/or purchase products from any company other than Koryeo, ordering Defendants to return all of Koryeo's confidential and proprietary information (and destroy any copies of such information, and granting such other and further relief as may be just and proper.

20. I hereby certify under penalty of perjury that, to the best of my knowledge, all of the foregoing is true and correct.

STEVE HONG

Sworn to before me this
20 day of December 2019

_____
Notary Public

SUMATHI VENKATESAN
Notary Public - State of New Jersey
My Commission Expires Aug 23, 2024